UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **WATSONSEAL MARKETING LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 5:22-cv-649-LCB** |
| ) | |
| **CRAWLSPACE NINJA IP LLC,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## OPINION & ORDER

WatsonSeal Marketing LLC sues Crawlspace Ninja IP LLC, several related entities,[1] and their owner, Michael Church, for false advertising under the Lanham Act, 15 U.S.C. § 1125, for tortious interference with business relations under Alabama law, and for unjust enrichment under Alabama law. (Doc. 21 at 1–2, 12–15). In response, Crawlspace Ninja moves to dismiss WatsonSeal's claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 22 at 1).

As explained below, WatsonSeal's false advertising claim is not facially plausible. The Court therefore grants Crawlspace Ninja's motion and dismisses that

---

[1] The related entities are Crawlspace Ninja Holding LLC, Crawlspace Ninja Franchising LLC, and Crawlspace Ninja Finance LLC. (Doc. 21 at 2). For the balance of this opinion, the Court refers to all named defendants collectively as "Crawlspace Ninja."

claim with prejudice. The Court declines to exercise supplemental jurisdiction over WatsonSeal's remaining state-law claims and dismisses them without prejudice.

**I.     BACKGROUND**

The following facts, which the Court presumes are true at this procedural posture,[2] come from WatsonSeal's amended complaint. WatsonSeal is "in the business of crawl space and basement performance products." (Doc. 21 at 5). It develops and manufactures "polymer lumber and concrete sealants" for commercial and residential basements and crawlspaces. *Id.* One of WatsonSeal's proprietary products is LumberKote, a subfloor and floor joist sealer designed "to protect structural framing and subfloor systems from excessive moisture absorption and rapid moisture uptake." *Id.* at 5–6. Simply put, LumberKote dries out lumber while sealing it off from subsequent water intrusion and moisture. *Id.* at 6. This means that lumber does not need to be dried before LumberKote is applied. *Id.*

Crawlspace Ninja is also in the business of crawl spaces. *Id.* at 6–7. It sells and distributes a variety of products designed to waterproof crawl spaces and remediate mold. *Id.* at 6. One such product is Anabec x70, "a moisture barrier product designed for application to unfinished building surfaces." *Id.* at 7. Crawlspace Ninja also has a YouTube channel dedicated to educating "homeowners about their crawl spaces and basements." *Id.* On the channel, Crawlspace Ninja

---

[2] *See infra* Part II.

regularly posts videos about "crawlspace encapsulation, basement waterproofing, [and] air quality." (Doc. 21-1 at 4). The channel and videos contain hyperlinks to Crawlspace Ninja's website and online store. (Doc. 21 at 11).

In April 2021, Crawlspace Ninja uploaded a video—titled, "Do Wood Sealers Work at Preventing Mold in Crawl Space," and narrated by Crawl Space Ninja owner, Michael Church—to its YouTube channel. *Id.* at 8; (Doc. 21-1 at 3–4).[3] The video begins with a short introduction:

> Hey, Michael Church, Crawl Space Ninja. One of our inspectors down in Alabama went to a job that had a subfloor and floor joist sealer applied. And now it has mold growing on it. So I want to talk about this. Are these sealers effective? And how to properly install them. Stay tuned.

(Doc. 21-1 at 4). After a musical interlude, Church shows viewers a photo of the mold and specifies that the sealer in question is LumberKote. *Id.* at 4–5. He explains that LumberKote, like Anabec x70, is a mold preventative that should be applied only after lumber is dried. *Id.* at 5. He then gives some straightforward advice: "If you're going to install a preventative, if you're going to install some kind of coating to your flooring, you've got to dry out the subfloor . . . before you do that." *Id.* at 6.

Throughout the video, Church emphasizes that he is not criticizing WatsonSeal or LumberKote. *Id.* at 3–6, 8–9. He stresses that LumberKote is not to blame for mold found at the Alabama jobsite, opining that whoever installed the

---

[3] A transcript of the video is attached to WatsonSeal's amended complaint. (Doc. 21-1 at 1).

LumberKote at the Alabama jobsite failed to first dry out the lumber. *Id.* at 4–5, 8. Church even describes LumberKote as "a fine product" that, "like everything" on the market, "is only as good as it's installed." *Id.* at 4–5. At the end of the video, he cautions viewers not to "let some mold remediation crawlspace company come into your house and tell you that they can . . . leave the wood wet and apply a LumberKote or an X70." *Id.* at 9.

WatsonSeal now sues Crawlspace Ninja for false advertising under the Lanham Act (Count I), for tortious interference with business relations under Alabama law (Count II), and for unjust enrichment under Alabama law (Count III). (Doc. 21 at 1–2, 12–15). In short, WatsonSeal alleges that the YouTube video falsely "leads consumers to believe that both LumberKote and Anabec x70 require wood to be dried prior to application," when in fact LumberKote has no such requirement. *Id.* at 10. WatsonSeal further alleges that the purpose of the video is "to deprive WatsonSeal of customers and to lure them to Crawl Space Ninja." *Id.* at 11.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 establishes the general standard for pleading civil claims in federal court. *Randall v. Scott*, 610 F.3d 701, 708 (11th Cir. 2010). Rule 8(a)(2) specifies that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a claim need not contain "detailed factual allegations," but it must offer more than

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint that fails "to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to assert a facially plausible claim for relief. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam). A claim is facially plausible when it raises "'a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## III.  DISCUSSION

Crawlspace Ninja moves to dismiss WatsonSeal's amended complaint under Rule 12(b)(6). The Court begins by considering the facial plausibility of WatsonSeal's false advertising claim (Count I) before turning to WatsonSeal's remaining state-law claims (Counts II & III).

### A.  WatsonSeal's False Advertising Claim (Count I)

The Court dismisses WatsonSeal's false advertising claim with prejudice.[4] Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), imposes civil liability

---

[4] The Court has subject matter jurisdiction over Count I under 28 U.S.C. § 1331 (providing federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

5

on those who engage in false advertising. *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160 (11th Cir. 2022).[5] To succeed on a false advertising claim, a plaintiff must prove five elements: (1) the defendant made a "false or misleading" commercial advertisement; (2) the advertisement "deceived, or had the capacity to deceive, consumers"; (3) "the deception had a material effect on purchasing decisions"; (4) "the misrepresented product or service affects interstate commerce"; and (5) the plaintiff "has been—or is likely to be—injured" by the advertisement. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

For purposes of the first element, the term "commercial advertisement" means any form of expression that: (1) is commercial speech; (2) made "for the purpose of influencing consumers to buy" the defendant's goods or services; and (3) "disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." *Edward Lewis Tobinick, MD v.*

---

[5] The Act reads in relevant part as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

*Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (quoting *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012)).[6]

The crux of Crawlspace Ninja's motion to dismiss is that the YouTube video is not a commercial advertisement and therefore not subject to liability under the Lanham Act. (Doc. 22 at 6).[7] Crawlspace Ninja argues that WatsonSeal fails to plausibly establish that the video is commercial speech or that the video was made for the purpose of influencing customers to buy Crawlspace Ninja's products. *Id.* at 6–9. The Court considers each argument in turn.

1. **Whether the video is commercial speech.**

WatsonSeal fails to plausibly establish that the video is commercial speech. Commercial speech—i.e., "expression related solely to the economic interests of the speaker and its audience"[8]—comes in two varieties: core-commercial speech and non-core commercial speech. *See Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983). Core-commercial speech means "speech that does no more than propose

---

[6] There is currently a circuit split over whether commercial advertising has a fourth requirement: made by a person who is in commercial competition with the plaintiff. *Compare Suntree Techs., Inc.*, 693 F.3d at 1349 (11th Cir. 2012) (adopting the fourth requirement), *with Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 800–01 (6th Cir. 2015) (declining to adopt the fourth requirement), *and Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 256 (4th Cir. 2017) (same). Because WatsonSeal fails to plausibly establish the first and second requirements, the Court need not also determine whether the fourth requirement applies.

[7] Crawlspace Ninja also argues that the video is not false or misleading. (Doc. 22 at 9–10). The Court need not address this argument because, as explained below, WatsonSeal fails to plausibly establish that the video is a commercial advertisement.

[8] *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).

a commercial transaction." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993) (quoting *Bolger*, 463 U.S. at 66).

Non-core commercial speech has no clear-cut definition. *See generally* Nat Stern, *In Defense of the Imprecise Definition of Commercial Speech*, 58 MD. L. REV. 55, 79–93 (1999) (summarizing "the contours of the commercial speech" doctrine). To determine whether material is non-core commercial speech, courts weigh three factors: (1) whether the material is "conceded to be" an advertisement; (2) whether the material contains a "reference to a specific product"; and (3) whether the speaker "has an economic motivation" for distributing the material. *Bolger*, 463 U.S. at 66–67. The presence of all three factors strongly indicates that the material is non-core commercial speech, but no one factor, or combination of factors, is dispositive. *Novella*, 848 F.3d at 950.

Crawlspace Ninja's YouTube video does not fall within the definition of core commercial speech. The video proposes no commercial transaction of any kind. It merely advises viewers that subfloor and floor joist sealers, such as LumberKote and Anabec x70, should be applied only to dry lumber. (Doc. 21-1 at 6). Accordingly, the video does not constitute core commercial speech.

Nor is the video non-core commercial speech. First, the video is not conceded to be an advertisement. (Doc. 22 at 7); (Doc. 27 at 5 n.2). Second, the video makes only a handful of references to LumberKote and Anabec x70. It does not promote

8

Anabec x70 over LumberKote or disparage LumberKote in any way. The video merely references the products to give viewers context for the video's central message—that subfloor and floor joist sealers should be applied only to dry lumber. These limited references to specific products fall far short of bringing the video into the realm of commercial speech.

Third and finally, Crawlspace Ninja's economic motivation for distributing the video is, at most, incidental to the video's central message. Crawlspace Ninja undoubtably has some economic motivation for uploading the video, given that the video provides the company with market exposure and includes hyperlinks to the company's website and online store. But such an attenuated economic motivation is wholly insufficient to transform otherwise noncommercial speech into commercial speech. *See, e.g.*, *Novella*, 848 F.3d at 951–52 (holding that online articles are not commercial speech merely because they contain hyperlinks to subscriptions and advertisements that generate revenue for the defendant-author); *RainSoft v. MacFarland*, 350 F. Supp. 3d 49, 62 (D.R.I. 2018) (same); *see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 384 (1973) ("[S]peech is not rendered commercial by the mere fact that it relates to an advertisement.").

In sum, the video possesses many of the hallmarks of non-commercial speech. It communicates information, expresses opinion, recites the grievances of others, and encourages dialogue on matters of public concern. *See New York Times Co. v.*

*Sullivan*, 376 U.S. 254, 266 (1964) (holding that a newspaper advertisement was not commercial speech because it "communicated information, expressed opinion, recited grievances, protested claimed abuses, and sought financial support on behalf of a movement whose existence and objectives are matters of the highest public interest and concern"). The video bears little—if any—resemblance to commercial speech. Accordingly, WatsonSeal fails to plausibly establish that the video is commercial speech.

### 2. Whether the video was made for the purpose of influencing customers to buy Crawlspace Ninja's products.

WatsonSeal also fails to plausibly establish that the video was made for the purpose of influencing customers to buy Crawlspace Ninja's products. Material created for the sole purpose of helping consumers make informed decisions is not commercial advertising subject to Lanham Act liability—even if the material is under-researched, inaccurate, or misleading. *E.g.*, *Novella*, 848 F.3d at 950; *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 505 (E.D. Pa. 2018). Here, the sole purpose of the video is to advise viewers that subfloor and floor joist sealers should be applied only to dry lumber. (Doc. 21-1 at 6). The fact that, in actuality, LumberKote need not be applied to dry lumber does not transform the purpose of the video. Accordingly, WatsonSeal fails to plausibly establish that the video was

made for the purpose of influencing customers to buy Crawlspace Ninja's products. The Court thus dismisses WatsonSeal's false advertising claim with prejudice.[9]

### B.     WatsonSeal's Remaining State-Law Claims (Counts II & III)

The Court dismisses WatsonSeal's remaining state-law claims without prejudice. Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Additionally, district courts have supplemental jurisdiction over state-law claims that are closely related to a claim arising within the court's original jurisdiction. 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction over state-law claims when the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Here, WatsonSeal's false advertising claim is the only claim falling within the Court's original jurisdiction. (Doc. 21 at 12–15). Because the Court has dismissed that claim with prejudice, *see supra* Section III.A, the Court declines to exercise supplemental jurisdiction over WatsonSeal's remaining state-law claims. The Court therefore dismisses those claims without prejudice.

---

[9] In its opposition brief, WatsonSeal requests leave to file a second amended complaint should the Court be "inclined to grant [Crawlspace Ninja's] motion to dismiss." (Doc. 27 at 15). Under Federal Rule of Civil Procedure 15, district courts should freely grant leave to amend "when justice so requires." A court need not grant leave to amend when amendment would be futile. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). Here, further amendment would be futile. No amount of artful pleading could change the plain wording of the video's transcript. The Court therefore declines to give WatsonSeal leave to file a second amended complaint.

## IV. CONCLUSION

The Court **GRANTS** Crawlspace Ninja's motion (Doc. 22) and **DISMISSES** WatsonSeal's false advertising claim (Count I) with prejudice under Rule 12(b)(6). The Court declines to exercise supplemental jurisdiction over WatsonSeal's remaining state-law claims (Counts II & III) and **DISMISSES** them without prejudice in accordance with 28 U.S.C. § 1367(c)(3). Finally, the Clerk of Court shall close this case. The Court will enter a final judgment separately.

**DONE** and **ORDERED** March 15, 2023.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE